UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10115-RGS

CHARLES BOYKIN

v.

GENZYME THERAPEUTIC PRODUCTS LP
and PAUL BEAUSOLEIL

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

July 12, 2023

STEARNS, D.J.

Charles Boykin brings this civil rights action against his former employer, Genzyme Therapeutic Products LP, and his former manager's superior, Paul Beausoleil, asserting violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Counts I and II); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count III); and the employment discrimination provisions of Massachusetts law, Mass. Gen. Laws ch. 151B, § 4 (Counts IV and V). Specifically, he alleges that defendants unlawfully discriminated against him on the basis of race and/or retaliated against him for engaging in protected conduct when he received a poor performance review in March of 2018. Defendants move for summary judgment on all claims. For the following reasons, the court will allow the motion.

## BACKGROUND

The essential facts, viewed in the light most favorable to Boykin as the non-moving party, are as follows.[1] Genzyme first hired Boykin in 2013. Although Boykin began as a manufacturing supervisor, at some point prior to 2017, Genzyme promoted him to the position of Senior Site Planning Analyst. As Senior Site Planning Analyst, Boykin managed the cycle count process[2] for Genzyme's Allston facility and investigated and documented deviations from the company's standard manufacturing processes at that facility. His manager was Michael Haepers, and Haepers's superior was Beausoleil.

At some point in 2017, issues began to arise about Boykin's job performance. First, early in the year, both Genzyme's Director of Quality and

---

[1] Defendants move to strike Boykin's Statement of Material Facts (SOF). Having reviewed the parties' arguments and the relevant submissions, the court will allow the motion to the extent that any fact in Boykin's SOF is inconsistent with the facts set forth in defendants' statement (which are deemed admitted given Boykin's failure to dispute the relevant paragraphs in his statement, *see* L.R. 56.1; *see also Plourde v. Sorin Grp. USA, Inc.*, 517 F. Supp. 3d 76, 81 (D. Mass. 2021)). The court will, however, deny the motion as to the portions of plaintiff's SOF that do not conflict with defendants' statement for the simple reason that, even if considered, nothing in these sections substantively affects the court's ruling on the merits. *See Terry v. SimplexGrinnell LP*, 2013 WL 1332240, at *1 (D. Mass. Mar. 28, 2013).

[2] Cycle counting is used to state inventory for financial reporting purposes.

Beausoleil expressed concerns about the pace at which Boykin was resolving deviation investigations. Beausoleil, for example, sent the following email to Boykin and others in May of 2017:

> We now have 2 minor deviations that are past due. This is unacceptable and a key performance indicator for the site and our team. I will setup a deviation meeting to understand why it's very common for our deviations to go past due this year and get the status of all our deviations.

Ex. A to Beausoleil Aff. [Dkt # 31-1]. Presumably in response to these concerns, Haepers spoke with Boykin about the need to complete deviation investigations more quickly several times throughout 2017.

Second, in the fall of that year, Genzyme's cycle count process failed an outside audit by Pricewaterhouse Coopers. Sebastien Bernhard, the Head of Finance for the Allston facility, criticized Boykin for the failed audit in front of his peers (all of whom were white). Boykin reported Bernhard to HR for alleged racial discrimination, and Bernhard later apologized for his treatment of Boykin.

In the winter of 2017, Beausoleil allegedly told another employee that "we finally have a job he [Boykin] can handle" as Boykin was mopping up ice melt in the facility. Pl.'s SOF [Dkt # 36] ¶ 32. Boykin and the other employee interpreted the comment as a racial remark, invoking historical stereotypes.

3

On December 5, 2017, as the time for year-end reviews approached, Haepers emailed Beausoleil a proposed rating of 3 on Genzyme's 9-block performance matrix. Haepers explained that, although Boykin had a "positive attitude," he could "lose focus at times, especially as the process owner for cycle counting," and "needs [to] focus on his basic tasks (cycling counting and deviation management)." Ex. B to Beausoleil Aff. [Dkt # 31-2]. Two hours later, Beausoleil instructed Haepers to enter the proposed rating into the system, but not to share it with Boykin for the time being.

Months later, on March 20, 2018, Haepers informed Boykin of the 3 rating. Haepers allegedly explained that he had personally wanted to rate Boykin as a 5 but had been overruled by Beausoleil, who thought Boykin was "making too much money."[3] Pl.'s SOF ¶ 34. When Boykin asked if he would receive an Individual Improvement Plan (IIP) because of the rating, Haepers said that he would. A few days later, before any IIP issued, Boykin requested and received a medical leave of absence. He never returned to work.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material

---

[3] A 5 rating would have rendered him eligible for a bonus and salary increase, whereas a 3 rating did not.

4

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The court assesses the validity of Boykin's claims using the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] *See Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008). Under this paradigm, a plaintiff bears the initial burden "to show . . . a prima facie case of discrimination." *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995). If the plaintiff makes the requisite showing, the burden shifts to the employer to "establish a legitimate, nondiscriminatory justification for the adverse employment action." *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015). If the defendant proffers a legitimate,

---

[4] Because the federal and state standards do not differ in any respect relevant to the court's decision, and because the parties themselves do not distinguish between the two, the court will address the state and federal claims together. *See Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 n.2 (1st Cir. 1991).

5

nondiscriminatory reason for its action, the burden of production shifts back to the employee, requiring him to provide evidence that "the employer's articulated justification is not true but a pretext." *Blare*, 419 Mass. at 443.

### a. Discrimination

To establish a prima facie case of discrimination, a plaintiff must proffer evidence that (1) he is a member of a protected class; (2) he performed his job "at an acceptable level"; and (3) he experienced an adverse employment action.[5]  *Blare*, 419 Mass. at 443; *see also Ray*, 799 F.3d at 113. The court is not convinced that Boykin has demonstrated an "acceptable" level of job performance, given his failure to dispute the existence of significant problems with the processes he managed during 2017. The court need not decide the issue, however, because even assuming Boykin has satisfied step one of the *McDonnell Douglas* framework, these same performance issues establish a legitimate, non-discriminatory rationale for adverse employment action, and Boykin does not offer any evidence that would allow a reasonable juror to find the employer's explanation pretextual.

---

[5] The court is aware that several courts have held that a negative performance evaluation, by itself, does not constitute an adverse employment action. *See, e.g.*, *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998); *Castro-Medina v. Procter & Gamble Com. Co.*, 565 F. Supp. 2d 343, 371-372 (D.P.R. 2008). As the First Circuit has yet to opine on the subject, however, the court will give Boykin the benefit of the doubt on this element of his prima facie case.

6

A rationale is pretextual when it is "not the real reason[] for" an employment action. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 682 (2016), quoting *Wheelock Coll. v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976); *see also Ray*, 799 F.3d at 113 (indicating that a rationale is pretextual when it is a "sham"). Boykin argues that a juror could infer that poor performance was not the "real" reason for his 3 rating because Haepers's alleged initial rating of 5 proves that Boykin was meeting expectations.[6] The problem is this: Because Boykin's entire theory of liability hinges on Beausoleil – not Haepers – being the relevant decisionmaker,[7] pretext must be measured from Beausoleil's perspective. Boykin must show, in other words, that *Beausoleil* did not genuinely believe that Boykin's performance merited a 3 rating. That Haepers allegedly held a more generous view of Boykin's performance has limited relevance to this issue and certainly would not, on its own, allow a reasonable juror to find Beausoleil's rationale pretextual.

---

[6] Boykin does not argue that Haeper's statement that Beausoleil attributed the downgrade to money, rather than performance, suffices to show pretext. He accordingly has waived this ground.

[7] Boykin does not suggest (let alone offer any evidence) that Haepers harbored any racial animus or retaliatory motive.

7

Boykin attempts to undermine the genuineness of Beausoleil's belief by alleging racial animus. Boykin's only evidence of animus, however, is a comment allegedly made while Boykin was sweeping ice melt – a comment that, while not overtly racist, Boykin and a colleague interpreted as such. Boykin Dep. [Dkt # 42-1] at 81:18-84:17. As case law is clear, however, that a "single isolated ambiguous remark" cannot, standing alone, support a finding of racial animus, *see Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1st Cir. 1996), this comment does not provide a reasonable juror sufficient basis to find racial animus.[8] The court accordingly must grant judgment in defendants' favor on the discrimination claims.

### b. Retaliation

To show a prima facie case of retaliation, a plaintiff must "show that he engaged in protected conduct, that he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004) (footnotes omitted), quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991). Boykin's claims falter on the third element. The record is devoid of any evidence suggestive of a causal connection between the alleged

---

[8] *See also Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998).

protected conduct (filing a complaint against Bernhard for racial discrimination) and the adverse action (the poor performance review by Beausoleil). At most, Boykin points out that Beausoleil and Bernhard were friends. But the mere fact that the two were friends would not, standing alone, allow a reasonable juror to find that Beausoleil was aware of, let alone acted on the basis of, the HR complaint against Bernhard. The court accordingly will grant judgment in defendants' favor on the retaliation claims, as well.

## ORDER

For the foregoing reasons, the motion for summary judgment is ALLOWED. The Clerk shall enter judgment against Boykin on all claims and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE